**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | | |
|---|---|---|
| **BOARD OF TRUSTEES OF THE LABORERS' LOCAL UNION NO. 265 PENSION FUND** | : | **CASE NO: 1:20-cv-875** |
| **and** | : | **JUDGE** |
| **LABORERS' LOCAL UNION NO. 265 PENSION FUND** | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | |
| **P. J. PLAS PLUMBING, INC.** | : | **COMPLAINT** |
| **and** | : | |
| **PLAS I, LLC** | : | |
| **and** | : | |
| **PLAS II, LLC** | : | |
| **and** | : | |
| **PLAS III, LLC** | : | |
| **and** | : | |
| **PLAS IV, LLC** | : | |
| **and** | : | |
| **PLAS LAND, LLC** | : | |
| Defendants. | : | |

1

This is an action for declaratory and monetary relief to accelerate and collect employer withdrawal liability payments, interest and penalties as required by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs bring this action to recover employer withdrawal liability, interest and penalties due to them from the Defendants, whom are engaged in businesses under common control. Plaintiffs allege as follows:

## PARTIES

1. Plaintiffs Board of Trustees of the Laborers' Local Union No. 265 Pension Fund are Trustees and "fiduciaries" of the Laborers' Local Union No. 265 Pension Fund ("Pension Fund"), as that term is defined in ERISA § 3(21), 29 U.S.C. § 1002(21), and bring this action in their capacity as Trustees and fiduciaries. The Board of Trustees is the plan sponsor of the Pension Fund as that term is defined in ERISA §§ 3(16)(B)(iii) and 4001(a)(10), 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10). The Trustees administer the Pension Fund at its principal place of business in Cincinnati, Ohio.

2. Plaintiff Pension Fund is a multiemployer pension plan within the meaning of ERISA. See ERISA §§ 3(37) and 4001(a)(3); 29 U.S.C. §§ 1002(37) and 1301(a)(3). Plaintiff Pension Fund is a defined benefit plan within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35). Plaintiff Pension Fund is administered by a joint Board of Trustees composed of an equal number of employer and employee representatives, as required by Section 302(c)(5) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 186(c)(5).

3. Plaintiff Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements ("CBAs") between the participating employers and the Laborers' International Union Local 265 ("Local 265"). All principal and income from such contributions, and investments thereof is held and used

for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund.

4. Defendant P.J. Plas Plumbing, Inc. ("P.J. Plas") is an Ohio corporation. P.J. Plas' principal place of business was located at 8805 Lancaster Ave, Cincinnati, Ohio. P.J. Plas was at all relevant times engaged in industry affecting commerce, as defined by Section 301(a) of the LMRA, 29 U.S.C. § 185(a), and was an "employer" as defined by ERISA § 3(5), 29 U.S.C. § 1002(5).

5. Defendant Plas I, LLC ("Plas I") is a limited liability company registered in the State of Ohio. Upon information and belief, Plas I's principal place of business is located in Cincinnati, Ohio.

6. Defendant Plas II, LLC ("Plas II") is a limited liability company registered in the State of Ohio. Upon information and belief, Plas II's principal place of business is located in Cincinnati, Ohio.

7. Defendant Plas III, LLC ("Plas III") is a limited liability company registered in the State of Ohio. Upon information and belief, Plas III's principal place of business is located in Cincinnati, Ohio.

8. Defendant Plas IV, LLC ("Plas IV") is a limited liability company registered in the State of Ohio. Upon information and belief, Plas IV's principal place of business is located in Cincinnati, Ohio.

9. Defendant Plas Land, LLC ("Plas Land") is a limited liability company registered in the State of Ohio. Upon information and belief, Plas Land's principal place of business is located in Cincinnati, Ohio.

10. Defendants P.J. Plas, Plas I, Plas II, Plas III, Plas IV and Plas Land (collectively "Plas Defendants") are under common control and shall be treated as a single employer for the purpose of collecting withdrawal liability due under the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"). See ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1).

## JURISDICTION AND VENUE

11. Plaintiffs Trustees of the Laborers' Local Union No. 265 Pension Fund are authorized to bring civil actions on behalf of Plaintiff Pension Fund, its participants, and beneficiaries for the purpose of collecting withdrawal liability pursuant to ERISA §§ 502(a)(3), 4301(a)(1) and 4202(3), 29 U.S.C. §§ 1132(a)(3), 1451(a)(1) and 1382(3).

12. Venue lies in this Court pursuant to ERISA §§ 4301(d) and 502(e)(2), 29 U.S.C. §§ 1451(d) and 1132(e)(2), in that Plaintiff Pension Fund is administered at its principal place of business in Cincinnati, Ohio.

## INTRODUCTION

**A.    ERISA**

13. ERISA is a statutory framework intended to protect the rights of participants in employee benefit plans. It creates a system of rules and regulations for the maintenance of employee benefit plans. Further, when the rules that govern the operation of employee benefit plans are not followed, ERISA provides a private right of action by which an aggrieved party can remedy ERISA violations.

**B.    MULTIEMPLOYER PLANS**

14. Multi-employer benefit plans are operated for the benefit of union employees who work for numerous different employers. The plans are particularly popular within building trades, and exist within a collective bargaining context, where employers have negotiated collective

bargaining agreements with labor unions. A union bricklayer, for instance, might work for numerous employers during the course of a single year. In order to help provide benefits for those workers, a multi-employer plan may be instituted, and will be managed by a joint board of trustees with representatives from both employers and the union. Employers fund the benefits by contributing to the multi-employer benefit funds. The required contribution is usually a set dollar figure for each hour worked by employees who perform covered work. Contractual agreements, generally the relevant collective bargaining agreement, determine the relevant practices and rates at which employers will contribute to the multi-employer plans that provide the benefits.

**C.    WITHDRAWAL LIABILITY**

15.    Pensions are a deferred benefit for work performed, and are required to vest pursuant to rules and regulations outlined by ERISA. Sometimes, participating employers who contribute to a multi-employer pension plan cease to participate in the plan. When this happens, employees may have earned vested retirement benefits that are not yet fully funded. These are referred to as unfunded vested benefits. An employer that is ceasing to participate in the benefit plan, a "withdrawing" employer, may be subject to liability for a share of the unfunded vested benefits. This liability is known as withdrawal liability. Withdrawal liability is calculated pursuant to a complicated statutory framework, and is not a penalty to an employer, rather, it is intended to pay for benefits which have been earned but are not yet fully funded.

**RELEVANT FACTS**

16.    Plaintiffs incorporate by reference each and every allegation of the foregoing paragraphs as if fully rewritten herein.

17.    Defendant P.J. Plas was a signatory to a collective bargaining agreement ("CBA") negotiated by the Laborers' International Union Local No. 265 ("Local Union 265").  See CBA,

p.8, attached as Ex. A. As a signatory, P.J. Plas was obligated to make contributions to Plaintiff Pension Fund so that P.J. Plas's employees may participate in and receive the employee benefits provided by the Pension Fund. See Ex. A, p.4-5.

18. Plaintiff Pension Fund is operated by the Trustees of the Laborers' Local Union No. 265 Pension Fund, Plaintiffs to this action. The Trustees are the plan sponsor of and fiduciaries to the Pension Fund, which provides pension benefits to Laborers, those performing bargaining unit work as defined by the CBA. The Pension Fund is financed entirely by contributions from employers who have contractually agreed to participate in the Pension Fund, along with investment returns earned on those contributions. Contributions are the lifeblood of the Pension Fund and ensure that benefit obligations are met.

19. In a letter dated August 31, 2018, the Local Union 265 (the Laborers Local Union associated with the Plaintiff Pension Plan) advised P.J. Plas that, effective 12:59 p.m. August 31, 2018, it was disclaiming its interest as the exclusive bargaining representative of the bargaining unit employees employed by P.J. Plas. The letter terminated the CBA in place with P.J. Plas, and thus also terminated P.J. Plas' obligation to contribute to Plaintiff Pension Fund. See Disclaimer Letter, attached as Ex. B.

20. Under the MPPAA, an employer that performs work in the building and construction industry has a complete withdrawal from a multiemployer pension plan when it ceases to have an obligation to contribute to the plan, <u>and</u> "continues to perform work in the jurisdiction of the [CBA] of the type for which contributions were previously required, or resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption." See ERISA § 4203(b), 29 U.S.C. § 1383(b).

6

21. Upon withdrawal, an employer is liable for its allocable share of the pension plan's unfunded vested benefits. See ERISA § 4201, 29 U.S.C. § 1381. A plan's unfunded vested benefits are those to which employees have become legally entitled, but which have not been fully funded. See ERISA § 4213(c), 29 U.S.C. § 1393(c).

22. Defendant P.J. Plas is an employer in the building and construction industry as that term is defined in ERISA § 4203(b), 29 U.S.C. § 1383(b) because substantially all of the employees for which P.J. Plas had an obligation to remit contributions to the Pension Fund, performed work in the building and construction industry.

23. In or around September 2019, Plaintiffs Trustees of the Pension Fund learned that P.J. Plas continued to have employees performing the same types of work described in and covered under the jurisdiction of the CBA. By continuing to perform work under the jurisdiction of the CBA, P.J. Plas effectively triggered a complete withdrawal from the Pension Fund. See ERISA § 4203(b), 29 U.S.C. § 1383(b).

24. As a result of this complete withdrawal from the Pension Fund, Defendant P.J. Plas incurred withdrawal liability to Plaintiff Pension Fund, becoming responsible for their proportionate share of the unfunded vested liability for benefits owed to participants of the Pension Fund. Defendant P.J. Plas has a share of the withdrawal liability in the amount of $718,984.00 as calculated by the Pension Fund's actuary pursuant to ERISA § 4211, 29 U.S.C. § 1391. See Employer Withdrawal Liability Assessment, attached as Ex. C, p.4.

25. On December 2, 2019, Plaintiffs Trustees of the Pension Plan, through their Fund Counsel, made a demand to Defendant P.J. Plas for payment of the assessment of withdrawal liability in accordance with ERISA §§ 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382(2) and 1399(b)(1). See Ex. C. Plaintiffs' Fund Counsel received confirmation that P.J. Plas received the

notice and demand of Employer Withdrawal Liability Assessment on December 6, 2019. See Assessment Return Receipt, attached as Ex. D. This "notice and demand" triggers a requirement that the employer begin paying its withdrawal liability in installments within 60 days. See ERISA § 4219(c)(2), 29 U.S.C. § 1399(c)(2). Defendant P.J. Plas failed to make the interim installment payments due within 60 days.

26.     The notice and demand also triggers a 90-day deadline for the employer to request that the plan sponsor review the assessment of liability. See ERISA § 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A). Thereafter, the employer must initiate arbitration within a maximum of 180 days from the date of its request for review. See ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1). If arbitration is not initiated by the employer, the employer's withdrawal liability is "due and owing" according to the schedule set forth in the notice and demand. See ERISA § 4221(b)(1), 29 U.S.C. § 1401(b)(1). P.J. Plas did not submit a request to review the assessment of Employer Withdrawal Liability to Plaintiffs Trustees of the Pension Fund, nor did P.J. Plas initiate a demand for arbitration. It is well established that if an employer misses the ERISA Section 4219 arbitration deadline, it forfeits its defenses to the withdrawal liability assessment.

27.     After a demand for payment of employer withdrawal liability, if the employer defaults on its scheduled payments, the plan may accelerate the principal amount of the employer's withdrawal liability upon 60 days' notice and sue for that amount, plus interest, liquidated damages, and attorney's fees. See ERISA § 4219(c)(5)(a), 29 U.S.C. § 1399(c)(5)(a).

28.     On or about February 4 and March 4, 2020, pursuant to ERISA § 4219(c)(5), 29 U.S.C. §1399(c)(5), Plaintiffs Trustees of the Pension Fund provided written notification to Defendant P.J. Plas of its failure to make the interim payments due on February 1 and March 1, respectively. See Arnold Letters, attached as Ex. E.

29. Under the MPPAA, "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1). The MPPAA employs the Internal Revenue Code's ("IRC") "controlled group" standards to determine whether entities are under common control and thus jointly liable for withdrawal liability. ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1), and 26 U.S.C. § 414. Three types of controlled groups exist: (1) parent-subsidiary; (2) combined; and (3) brother-sister. 26 C.F.R. § 1.414(c)-2.

30. A brother-sister controlled group exists "if the same five or fewer people own both a controlling interest in, and effectively control the same group of businesses." 26 C.F.R. § 1.414(c)-2(c)(1). In the case of a corporation, a controlling interest is defined as ownership of 80% or more (by value or voting power) of the corporation's stock. 26 C.F.R. § 1.414(c)-2(b)(2)(i)(A). "Effective control" is demonstrated by identical ownership of at least 50% of the combined voting power of all the voting stock of a corporation or by ownership of at least 50% of the profits, interest or capital interest of a partnership. See 26 C.F.R. § 1.414(c)-2(c)(2).

31. All members of a commonly controlled group of trades or businesses are to be treated as a single employer. See ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1). Thus, each member of the group is liable for the withdrawal of any other member. MPPAA provides that any transaction designed to "evade or avoid" withdrawal liability should be ignored. See ERISA § 4212(c), 29 U.S.C. § 1392(c).

32. Notice of default sent to the contributing entity which is a member of a controlled group of trades or businesses, within the meaning of ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1), constitutes constructive notice to the other members of the same controlled group. ERISA §

4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A) does not require notice to the other members of a controlled group. See 49 FR 22642. As such, all Defendants, as members of the controlled group, have received constructive notice of the default.

## PLAS FAMILY COMMON CONTROL

33. The Plas family includes father, Paul J. Plas ("Paul J.,") deceased February 2002, son, Paul D. Plas ("Paul D."), daughter, Janet 'Jan' Louis ("Janet"), and Lana Plas ("Lana"), who is married to Paul D., and therefore Paul J.'s daughter-in-law. See Cincinnati.com obituary for Paul J. Plas (Accessed October 5, 2020), available at https://legcy.co/3l8VzAS, and attached as Ex. F. The Plas family owns and operates the Plas Defendants, a group of businesses under common control as defined by ERISA § 4001(b)(1), 29 § 1301(b)(1).

34. In 1964, when Defendant P.J. Plas was incorporated, Paul J. was a majority shareholder. See P.J. Plas Articles of Incorporation, attached as Ex. G, p.4. For over 30 years, Paul J. operated P.J. Plas from the business address 8805 Lancaster Ave, Cincinnati, Ohio.

35. Paul D. is the Agent/Registrant for Defendants Plas I, Plas II and Plas Land. Defendants Plas I, Plas II and Plas Land are all registered to the business address located at 8805 Lancaster Ave, Cincinnati, Ohio. See Plas I Articles of Organization, attached as Ex. H; Plas II Articles of Organization, attached as Ex. I; Plas Land Articles of Organization, attached as Ex. J.

36. Janet is the Agent/Registrant for Defendant Plas IV. At the time Plas IV was organized, Janet controlled a 50% interest in Plas IV, Paul D. controlled 25%, and Lana controlled the remaining 25%. Essentially, Janet holds half of the business and her brother and his wife hold the other half. Plas IV is registered to the business address located at 8805 Lancaster Ave, Cincinnati, Ohio. See Plas IV Articles of Organization, attached as Ex. K.

37. Upon information and belief, as well as based upon publicly available documentation, brother and sister Paul D. and Janet have a controlling interest in, and effectively control, Defendant P.J. Plas. See Florida Secretary of State Records, attached as Ex. L, identifying Paul D. as President of P.J. Plas, and Janet as Vice President.

38. In addition, Paul D. and Janet are members of, and own a controlling interest of Defendants Plas I, Plas II and Plas III. See Plas I Leasing Agreement, attached as Ex. M, p.12; Plas II Easement Deed, attached as Ex. N, p.2; Plas III Easement Deed, attached as Ex. O, p. 2.

39. The various Plas Defendants have directly and indirectly transferred real estate and other financial interests between themselves. In effect, these transfers appear to be an effort to keep assets out of the name of the contributing employer, Defendant P.J. Plas, and avoid or evade withdrawal liability.

40. A main example of the efforts to keep assets out of the name of the contributing employer, is the longtime business location for Defendant P.J. Plas: 8805 Lancaster Ave. This location also serves as the mailing and tax address for various other Plas Defendants. While this property remained in the Plas family for decades, the actual ownership changed hands several times. See the attached property records from the Hamilton County Auditor, (Accessed October 29, 2020), available at https://wedge3.hcauditor.org/view/re/6000201006400/2019/transfers, and attached as Ex. P.

41. The Auditor's records indicate that the business address located on Lancaster Avenue was transferred directly from Paul J., to Defendant P.J. Plas, and then eventually to Defendant Plas I. Plas I eventually sold the property to an unrelated party in 2019 for $485,000. See Ex. P.

42. In addition to keeping this property asset out of the name of the signatory employer, Defendant P.J. Plas, publicly available documents indicate that the owner of the property from 2002 to 2019, Defendant Plas I, rented the 8805 Lancaster Ave. property to Defendant P.J. Plas. See Ex. M, Plas I Leasing Agreement.

43. Public records illustrate other direct transfers between the Plas Defendants. Pursuant to a General Warranty Deed dated June 2, 2016, Defendant P.J. Plas transferred real property located at 4453 Sycamore Rd, Cincinnati, Ohio to Defendant Plas III. The General Warranty Deed provides that Plas III's tax mailing address is located at 8805 Lancaster Ave. See 2016 Deed, attached as Ex. Q, p.1.

44. It is believed that the same individuals own a controlling interest in, and effectively control the Plas Defendants. As such, they are part of a controlled group. Based upon the common control of Defendant P.J. Plas and the remaining Plas Defendants, Defendants Plas I, Plas II, Plas III, Plas IV, and Plas Land are jointly liable for the withdrawal liability owed by Defendant P.J. Plas.

## NOTICE OF ASSESSMENT AND DEFAULT ON PAYMENTS DUE

45. On December 6, 2019, Defendant P.J. Plas was delivered a notice and demand for payment of withdrawal liability issued by the Plaintiff Pension Fund, through its Fund Counsel, in accordance with ERISA §§ 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382(2) and 1399(b)(1). See Assessment Letter, attached as Ex. C; Assessment Return Receipt, attached as Ex. D.

46. The notice advised Defendant P.J. Plas that it was required to discharge its withdrawal liability in one lump sum of $718,984.00 or in 240 payments of $2,611.00. See Ex. C. Pursuant to ERISA § 4219(c)(2), 29 U.S.C. § 1399(c)(2), P.J. Plas' first payment was due February 1, 2020.

47. Defendant P.J. Plas did not request review of the Pension Fund's determination of its withdrawal liability pursuant to ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1). ERISA § 4221(b)(1), 29 U.S.C. § 1401(b)(1) provides that "[i]f no arbitration proceeding has been initiated pursuant to [ERISA § 4221(a), 29 U.S.C. § 1401(a)], the amounts demanded by the plan sponsor under [ERISA § 4219(b)(1), 29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." As a result of not initiating arbitration proceedings regarding Plaintiff Pension Fund's determination, any potential affirmative defenses are now waived.

48. ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), provides that in the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. The statute defines "default," in part, as "the failure of the employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure."

49. On or about February 4 and March 4, 2020, pursuant to ERISA § 1419(c)(5), 29 U.S.C. §1399(c)(5), Plaintiff Trustees of the Pension Fund provided written notification to Defendant P.J. Plas of its failure to make the interim payments due on February 1 and March 1, respectively. See Arnold Letters, attached as Ex. E. This correspondence advised that Defendant P.J. Plas was delinquent in interim withdrawal liability payments, and that Plaintiff Pension Fund would take action under the statutes to collect the amount due.

50. Pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5) and in accordance with the law's "pay now-dispute later" rules, Plaintiff Pension Fund is entitled to immediate payment

of the outstanding amount of Defendant P.J. Plas' withdrawal liability, plus accrued interest as a result of P.J. Plas' failure to cure its default on the required payments within 60 days.

51. Defendant P.J. Plas is in default under ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5) due to the failure to cure its payment default within 60 days after receiving written notification of such payment default.

## COUNT ONE
## WITHDRAWAL LIABILITY

52. Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs as if repeated herein.

53. The Plaintiff Trustees bring this action as fiduciaries of the Plaintiff Pension Fund, seeking an order holding the Plas Defendants jointly and severally liable for the assessment of employer withdrawal liability. Pursuant to the MPPAA, an employer's failure to make withdrawal liability payments by the respective due dates shall be treated in the same manner as an action to collect delinquent contributions under ERISA Section 515. See ERISA §§ 4301(b), 502(a)(3), 29 U.S.C. §§ 1451(b), 1132(a)(3).

54. Defendant P.J. Plas failed to make any of the interim and other required withdrawal liability payments. As a result, the benefits earned by participants in the Pension Fund may be in jeopardy through no fault of their own. Pursuant to ERISA § 4219(c)(5), 29 U.S.C. §1399(c)(5), the entire amount of the withdrawal liability owed to Plaintiff Pension Fund is now due and owing.

55. Plaintiff Pension Fund is entitled to interest and/or liquidated damages that have accrued on the total outstanding withdrawal liability from the due date of the first payment owed. Interest and/or liquidated damages shall be charged at rates designated in the Pension Fund's Policies, pursuant to ERISA § 4301(b), 29 U.S.C. § 1451(b). See Laborers 265 Employer

Withdrawal Liability Policy, attached as Ex. R, § VI(f). The first payment was due on February 1, 2020, thus interest began accruing on February 1, 2020.

56. Pursuant to ERISA § 4301(b), 29 U.S.C. § 1451(b), Plaintiff Pension Fund is permitted to treat the failure of P.J. Plas to make a withdrawal liability payment within the time prescribed in the same manner as a delinquent contribution. Under the Pension Fund's Employer Withdrawal Liability Policy, Plaintiff Pension Fund is entitled to the greater of the accrued interest outstanding, or liquidated damages in the amount of 20% of the total amount owed. Ex. R, § VI(f). At this point in time, the assumption is that the 20% liquidated damages will be larger than the interest owed.

57. As a result of the failure to timely cure the default, Plaintiff Pension Fund is entitled to judgment in the amount of $718,984.00, plus accrued interest and/or liquidated damages as detailed above. Plaintiff Pension Fund is further entitled to interest on the accelerated amount which has accrued and continues to accrue. Finally, Plaintiff Pension Fund is entitled to attorney fees and costs pursuant to ERISA §§ 502(g) and 4301(e), 29 U.S.C. §§ 1132(g) and 1451(e).

58. The Plas Defendants are owned and effectively controlled by the same individuals, and as such, they are part of a controlled group. As members of the same control group, the Plas Defendants are jointly and severally liable for the withdrawal liability, interest, liquidated damages and other costs assessed against Defendant P.J. Plas due to its complete withdrawal from the Pension Fund.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant P.J. Plas Plumbing, Inc., Defendant P.J. Plas I, LLC, Defendant P.J. Plas II, LLC, Defendant P.J. Plas III, LLC, Defendant P.J. Plas IV, LLC and Defendant Plas Land, LLC as follows:

(a) an Order finding that Defendants are jointly and severally liable for and required to make immediate payment of the entire amount of the withdrawal liability assessment in the amount of $718,984.00 to Plaintiff Pension Fund;

(b) an Order requiring Defendants to pay the greater of: the accrued interest to Plaintiff Pension Fund for the accelerated, entire amount of the withdrawal liability assessment, or 20% liquidated damages on the withdrawal liability amount, as called for in the Plaintiff Pension Fund's Employer Withdrawal Liability Policy, and as allowed by statute;

(c) an Order requiring Defendants to pay interest on the accelerated amount, which will continue to accrue, to Plaintiff Pension Fund;

(d) an Order requiring Defendants to pay attorney fees and costs, as provided under ERISA §§ 502(g) and 4301(e), 29 U.S.C. §§ 1132(g) and 1451(e);

(e) that the Court retain jurisdiction of this cause pending compliance with its Order; and

(f) such other further legal or equitable relief as the Court deems appropriate.

Respectfully submitted,

**LEDBETTER PARISI LLC**

/s/ Tenechia D. Lockhart
Tenechia D. Lockhart (OH #0093648)
Stephen P. Nevius (OH#0092598)
Jennie G. Arnold (OH #0084697)
5078 Wooster Road, Suite 400
Cincinnati, OH 45226
tlockhart@fringebenefitlaw.com
snevius@fringebenefitlaw.com
jarnold@fringebenefitlaw.com
(937) 619-0900
(937) 619-0999 (fax)
*Counsel for Plaintiffs*